FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 16, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CANDIDO CARBONELL, | NO: 4:18-CV-5054-RMP |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| TYSON FRESH MEATS, INC., a for profit corporation; DAVID TOBIAS, and his community property; and TEODORO MARISCAL, and his community property, | |
| Defendants. | |

BEFORE THE COURT is a Motion to Dismiss for Failure to State a Claim filed by Defendants Tyson Fresh Meats, Inc. and David Tobias (collectively, "Defendants"). ECF No. 20. Plaintiff Candido Carbonell seeks relief under the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), the Washington Family Leave Act ("WFLA"), and the Washington Law Against Discrimination ("WLAD"), as well as state tort claims of Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress,

Negligent Hiring, Battery, Assault, and Intentional Infliction of Physical Injury and Aggravation. *See* ECF No. 17. The Court has considered the parties' arguments, has reviewed the pleadings and the record, and is fully informed.

## BACKGROUND

In July of 2010, Mr. Carbonell began working for Tyson as a laborer. ECF No. 17 at 2. Mr. Carbonell is of Cuban descent. *Id.* In June of 2015, Mr. Carbonell suffered an injury at work that required surgery, physical therapy, and medication for his shoulder, back, and neck. *Id.* at 3. Because of this injury, Mr. Carbonell's physicians recommended that he perform light duty work with little physical strain as he recovered. *Id.* Tyson initially approved Mr. Carbonell's light duty work request. *Id.*

According to Mr. Carbonell, Defendants did not always keep its light duty promises. Plaintiff alleges that on one occasion Defendants assigned Mr. Carbonell to a project that required him to lift fifty to sixty pound boxes and also threatened him with his job if he refused to do the work. ECF No. 17 at 4. Plaintiff also alleges that on another occasion Teodoro Mariscal, Mr. Carbonell's supervisor, demanded that Mr. Carbonell lift heavy pieces of meat from the floor weighing over thirty pounds, and physically shoved Mr. Carbonell when he said that the work was outside of his restrictions. *Id.* at 4–5. Mr. Carbonell alleges that this verbal and physical abuse for performing light duty work continued throughout the next several

years, resulting in Mr. Carbonell's fainting, trips to the emergency room, and a second shoulder surgery after the injury was aggravated. *Id.* at 4–10.

After the second shoulder surgery, Mr. Carbonell took medical leave. ECF No. 17 at 9. When he returned from that leave, he requested to remain on light duty work, as his doctors recommended. *Id.* at 9–10. Mr. Carbonell alleges that this time Defendants did not accommodate his requested work restrictions. *Id.* at 10. Mr. Carbonell states that he is still going through treatment for his physical injuries suffered at, and aggravated by, his employment with Tyson and the conduct of the other Defendants. *Id.*

Plaintiff also alleges that Mr. Carbonell's coworkers and supervisors would harass Mr. Carbonell for his Cuban heritage and descent. ECF No. 17 at 9. He claims that they would call him racial slurs, including "blackie" and "pinche negro." *Id.* He states that his coworkers and supervisors would ask Mr. Carbonell how he got into the country. *Id.* Additionally, he alleges they would declare "long live Fidel Castro and the revolution." *Id.*

Mr. Carbonell alleges that he would complain to Mr. Tobias, his manager, about Mr. Mariscal's and others' behavior. ECF No. 17 at 4–10. Plaintiff alleges that instead of working to end or prevent the harassment, Mr. Tobias would join in on the discrimination by asking about Mr. Carbonell's immigration status and making negative comments about his Cuban heritage and dark-colored skin. *Id.* at 8. Additionally, Plaintiff claims that Tyson's Human Resources department failed to

address the harassment when Mr. Carbonell brought it to the department's attention. *Id.* at 5–6. Mr. Carbonell claims that he requested a hearing to discuss and prove his complaints, but that Tyson denied that request. *Id.* at 6. Plaintiff alleges that Defendants eventually suspended Mr. Carbonell for a full day of work for complaining about the harassment and discrimination. *Id.* at 8.

Mr. Carbonell filed a complaint against Defendants and other coworkers, alleging claims under the ADA, WLAD, FMLA, WFLA, and Washington state tort law. ECF No. 1. Mr. Carbonell filed his First Amended Complaint thereafter, removing his coworkers as defendants and leaving Tyson, Mr. Tobias, and Mr. Mariscal as Defendants. ECF No. 17. He also alleged additional Washington state tort claims. *Id.*

Defendants filed the instant Motion to Dismiss the First Amended Complaint for Failure to State a Claim. ECF No. 20. The Court has considered Mr. Carbonell's response, ECF No. 23, and Defendants' reply. ECF No. 24.

## LEGAL STANDARD

A plaintiff's claim will be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff pleads "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a Rule 12(b)(6) motion to dismiss, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required, however, to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## DISCUSSION

### Claims Under FMLA and WFLA

The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, allows employees of qualified employers to take "reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). It entitles employees to take a total of 12 workweeks of leave per year for certain medical reasons, including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA also authorizes the Department of Labor ("DOL") to implement guiding regulations. 29 U.S.C. § 2654.

To protect an employee's right to take medical leave, the FMLA prohibits certain acts by an employer that would prevent or discourage an employee from taking FMLA leave. 29 U.S.C. § 2615(a). First, the FMLA prohibits an employer's interference with an employee's attempt to exercise FMLA rights to which the employee is entitled. 29 U.S.C. § 2615(a)(1). When a plaintiff accuses an employer of violating section 2615(a)(1), it is known as an interference claim. *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011). Second, an employer cannot discharge or discriminate against an employee for exercising his FMLA rights. 29 U.S.C. § 2615(a)(2). A plaintiff's claim under section 2615(a)(2) is known as a retaliation claim. *Sanders*, 657 F.3d at 777.

Mr. Carbonell alleges both interference and retaliation claims under the FMLA in his First Amended Complaint. ECF No. 17 at 13.

### A. Interference Claim

Mr. Carbonell's first FMLA claim against Defendants is an interference claim. ECF No. 17 at 13–14. He argues that Defendants failed to provide him with written notice of his eligibility for leave and benefits, prevented him from taking the leave for which he was eligible, and failed to return him to the same or similar position on return from leave. *Id.* Defendants argue that Mr. Carbonell received medical leave, and, therefore, his interference claim fails. ECF No. 20 at 9.

A plaintiff claiming FMLA interference meets his prima facie case by establishing five elements: (1) he was eligible for the FMLA's protections; (2) his

employer was covered by the FMLA; (3) he was entitled to FMLA leave; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him the FMLA benefits to which he was entitled. *Sanders*, 657 F.3d at 778.

As to the first element, the DOL's regulations define an eligible employee as an employee who (1) has been employed by the employer for at least 12 months; (2) has worked 1250 hours during the 12-month period immediately preceding the leave; and (3) is employed at a worksite with 50 or more employees of the employer working within 75 miles of the worksite. 29 C.F.R. § 825.110(a); *see also* 29 U.S.C. § 2611(2)(A).

In his First Amended Complaint, Mr. Carbonell alleges that he began working for Defendants in July of 2010. ECF No. 17 at 2. He suffered his injury in June of 2015 and took leave in March of 2017. *Id.* at 3 & 10. Mr. Carbonell has alleged that he worked more than one year with Defendants by 2015 and by his second injury in 2017. Further, Mr. Carbonell alleges that he worked at least 1,250 hours in any given year, and that the Defendants' worksite employed over 50 employees within a 75 mile radius. *Id.* at 11. Taking the factual allegations in the complaint as true, Mr. Carbonell has alleged sufficient facts to support the first element of his FMLA interference claim.

The second element of an interference claim requires the Plaintiff to allege that his employer is covered by the FMLA. *Sanders*, 675 F.3d at 778. "An employer covered by the FMLA is any person engaged in commerce or in any

industry or activity affecting commerce, who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year."  29 C.F.R. § 825.104(a); *accord* 29 U.S.C. § 2611(4)(A).

Mr. Carbonell alleges that Defendant Tyson is an employer that is engaged in commerce and the dealing of goods in commerce.  ECF No. 17 at 11.  Further, he alleges that Tyson employs more than 50 employees.  *Id.*  However, Mr. Carbonell has failed to allege whether 50 or more employees work 20 or more calendar workweeks a year.  While he states that he is a full-time employee, it is unclear whether these other employees were full-time or seasonal.  *Id.* at 2.  Therefore, Mr. Carbonell has failed to allege facts sufficient to meet the second element of his FMLA interference claim.

The third element of an interference claim requires a plaintiff to establish that he was entitled to FMLA leave or benefits.  *Sanders*, 675 F.3d at 778.  The FMLA provides that an employee is entitled to leave when "a serious health condition" renders the employee "unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  The term "serious health condition" under the FMLA means "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. 2611(11).  The first prong, inpatient care, refers to "an oversight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity."  29 C.F.R. §

825.114.  Incapacity is defined as "inability to work . . . due to the serious health condition, treatment therefore, or recovery therefrom."  29 C.F.R. § 825.113(b).  The second prong of serious medical injury, continuing treatment, is defined as a period of incapacity of more than three consecutive full calendar days or conditions requiring multiple treatments, including restorative surgery after an injury.  29 C.F.R. § 825.115.

Mr. Carbonell alleges that he suffered a work place injury on June 18, 2015. ECF No. 17 at 3.  He claims that this injury required surgery, physical therapy, and medication for his shoulder, back, and neck.  *Id.*  He also claims to have re-injured himself while working on May 18, 2016, which required a visit to the emergency room.  *Id.* at 7.  Additionally, Mr. Carbonell states that he received another shoulder surgery in March 2017.  *Id.* at 8.  After this second shoulder surgery, Mr. Carbonell alleges that his doctors ordered him to take leave due to an inability to work.  *Id.* at 9.  He claims that he is still undergoing treatment for his physical injuries that he suffered while working for Defendants.  *Id.* at 10.

Taking Mr. Carbonell's allegations as true for purposes of this motion, he required two separate surgeries that prevented him from performing the duties of his position. ECF No. 17 at 3 & 8.  Further, Mr. Carbonell was subjected to continuing treatment, as he had multiple restorative surgeries due to injuries received and aggravated while on the job.  *Id.*  As alleged, Mr. Carbonell's injury is a serious medical injury under the FMLA, entitling him to FMLA leave.  Therefore, Mr.

Carbonell has alleged sufficient facts to establish the third element of an FMLA interference claim.

The fourth element of an interference claim is that the plaintiff provided the employer with sufficient notice of his intent to take leave. *Sanders*, 675 F.3d at 778. If the leave is foreseeable, the employee "shall provide the employer with not less than 30 days' notice, . . . except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable." 29 U.S.C. § 2612(e)(2)(B).

Mr. Carbonell's First Amended Complaint does not mention any specific instances in which he put Defendants on notice of his intent to take leave under the FMLA. Mr. Carbonell alleges that "[e]ach time that Plaintiff put Defendant Tyson on notice that he had a serious health condition that could have been subject protected leave [*sic*], Defendant Tyson failed inquire [*sic*] about the condition and failed to provide Plaintiff with written notice of his eligibility" for medical leave. ECF No. 17 at 9. Additionally, it appears that Mr. Carbonell did take some form of leave in March of 2017, but Mr. Carbonell does not state whether he gave his employer notice of his intent to take FMLA leave. *Id.* There are no other allegations regarding notice in the First Amended Complaint. Mr. Carbonell has failed to allege a plausible claim for interference with FMLA leave because he has not alleged that he gave Defendants sufficient notice of his intent to take leave.

The fifth element of an interference claim is that the employer denies the plaintiff FMLA benefits to which he is entitled. *Sanders*, 675 F.3d at 778. A main benefit provided by the FMLA is the right to take medical leave to care for one's own injuries. 29 U.S.C. § 2612(a). An employer interferes with an employee's right to take this medical leave if the employer characterizes FMLA-qualifying leave as personal leave. *See Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1134–35 (9th Cir. 2003).

Additionally, an employer may interfere with an employee's FMLA rights when the employee notifies the employer of his intent to take leave that may be FMLA-qualifying, but the employer fails to inquire further to determine the employee's FMLA eligibility. 29 C.F.R. § 825.301. If the leave is FMLA-qualifying, the employer must notify the employee of his eligibility within five business days of being given notice by the employee. 29 C.F.R. § 825.300(b)(1). The notice must be in writing and must detail the specific expectations and obligations of the employee in taking and completing FMLA leave. 29 C.F.R. § 825.300(c)(1). An employer's failure to follow these notice procedures may constitute an interference with the employee's FMLA rights. 29 C.F.R. § 825.301(e). However, if an employee does take leave, the employee cannot make an FMLA interference claim with the employer's failure to give notice, unless the employer's actions interfered with the employee's ability to take leave. *See Jackson v. Simon Prop. Group, Inc.*, 795 F. Supp. 2d 949, 965 (N.D. Cal. 2011). The DOL's

regulations explain how an employer's failure to notify an employee of his FMLA

rights might constitute an interference of the employee's rights:

> For example, if an employer that was put on notice that an employee
> needed FMLA leave failed to designate the leave properly, but the
> employee's own serious health condition prevented him or her from
> returning to work during that time period regardless of the designation,
> an employee may not be able to show that the employee suffered harm
> as a result of the employer's actions. However, if an employee took
> leave to provide care for a son or daughter with a serious health
> condition believing it would not count toward his or her FMLA
> entitlement, and the employee planned to later use that FMLA leave to
> provide care for a spouse who would need assistance when recovering
> from surgery planned for a later date, the employee may be able to show
> that harm has occurred as a result of the employer's failure to designate
> properly. The employee might establish this by showing that he or she
> would have arranged for an alternative caregiver for the seriously ill
> son or daughter if the leave had been designated timely.

29 C.F.R. § 825.301(e).

Mr. Carbonell argues in his response to Defendants' Motion to Dismiss that

mischaracterizing FMLA leave as personal leave violates the FMLA. ECF No. 23 at

4. It appears Mr. Carbonell did take leave following his second shoulder surgery.

*See* ECF No. 17 at 9 (claiming that Mr. Carbonell's physicians ordered him to take

leave, and then return to work two months later with work restrictions). The

complaint does not say whether Tyson designated the leave as personal, medical, or

some other kind of leave. Without this information, the complaint does not allege

that Tyson interfered with Mr. Carbonell's leave by classifying it as personal rather

than medical. Thus, Mr. Carbonell fails to establish the fifth element of an FMLA

interference claim.

Mr. Carbonell also claims that Defendants failed to inquire about his medical issues and leaves of absence to determine whether his leave was FMLA-qualifying. ECF No. 17 at 9.  However, there is no further mention of Defendants' lack of inquiry outside of one conclusory paragraph in Mr. Carbonell's complaint.  *Id.*  Mr. Carbonell fails to allege how Defendants' failure to inquire about Mr. Carbonell's leave or failure to give notice about his FMLA rights affected his ability to take leave.  In fact, Mr. Carbonell alleges that he did take leave after his second shoulder surgery.  *Id.*

Mr. Carbonell's claim is similar to the plaintiff's claim in *Jackson*.  In *Jackson*, an employee argued that an employer's failure to give him notice that the FMLA entitled him to only 12 weeks of leave, after the employee already had taken the leave, constituted FMLA interference.  *Jackson*, F. Supp. 2d at 965.  However, as the district court in that case noted, the FMLA prohibits an employer's interference with an employee's "exercise" of his FMLA rights.  *Id.*; *see also* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.").  An employer's responsibility to give certain FMLA notice under 29 C.F.R. § 825.301(b) and similar provisions are not rights that an employee "exercises."  *Jackson*, F. Supp. 2d at 965; *see also* 29 C.F.R. § 825.301(e).  Therefore, absent some allegations that the failure to give notice tangibly affected an

employee's ability to exercise an FMLA right, failure to give notice, on its own, does not constitute an interference with an FMLA right. *Id.*

Here, Mr. Carbonell did take some sort of leave after his second shoulder surgery. ECF No. 17 at 9. While he alleges that Defendants' failure to give him notice about his FMLA rights or failure to inquire about his injury interfered with his FMLA rights, Mr. Carbonell fails to allege a connection between Defendants' actions and the rights with which Defendants allegedly interfered. Without alleging the nexus between Defendants' actions and interference with Mr. Carbonell's ability to take medical leave, Plaintiff has failed to allege sufficient facts to support an interference claim. Thus, Mr. Carbonell's First Amended Complaint fails to establish the fifth element of an FMLA interference claim because it fails to allege any actions by the Defendants that denied him FMLA benefits to which he was entitled.

Therefore, the Court finds that Mr. Carbonell's First Amended Complaint fails to state a claim for FMLA interference.

### B. Retaliation Claim

Mr. Carbonell also alleges an FMLA retaliation claim. ECF No. 17 at 13. He claims that Defendants retaliated against him for taking his medical leave. *Id.* Defendants argue that Mr. Carbonell's assertions in the First Amended Complaint lack legal sufficiency to state a retaliation claim. ECF No. 20 at 9–10.

A plaintiff establishes a prima facie case[1] for FMLA retaliation by alleging that (1) the plaintiff availed himself of a protected FMLA right; (2) the plaintiff was affected by an adverse employment decision; and (3) there is a causal connection between the two actions. *Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1269 (W.D. Wash. 2013).

The first element of an FMLA retaliation claim is that the plaintiff availed himself of a protected FMLA right. *Crawford*, 983 F. Supp. 2d at 1269. In his response to Defendants' Motion to Dismiss, Mr. Carbonell claims that he engaged in protected activity under the FMLA by requesting leave and light duty work following his first shoulder surgery in June of 2015. ECF No. 23 at 6–7. But Mr. Carbonell does not allege that he requested leave following the first surgery in his First Amended Complaint. *See* ECF No. 17 at 2–4. However, Mr. Carbonell does allege that he requested, and took, leave following his second shoulder surgery in March of 2017. *Id.* at 9. It is unclear from his allegations whether his 2017 leave was FMLA leave. However, because Mr. Carbonell alleged that he was FMLA eligible, and because Mr. Carbonell took the leave immediately following shoulder

---

[1] The Ninth Circuit held in *Sanders* that the *McDonnell Douglas* burden-shifting framework applies to FMLA retaliation claims. *See Sanders*, 657 F.3d at 777; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). However, the *McDonnell Douglas* framework does not apply at the pleading stage. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). Therefore, Mr. Carbonell only needs to allege sufficient facts to support a plausible claim for relief..

surgery, the Court concludes that Mr. Carbonell likely was on FMLA leave.  By

taking FMLA leave, Mr. Carbonell has availed himself of a protected FMLA right.

*See* 29 U.S.C. 2612(a).  Therefore, Mr. Carbonell arguably has alleged facts

supporting the first element of an FMLA retaliation claim.

The second element of an FMLA retaliation claim is that the plaintiff was

affected by an adverse employment action.  *Crawford*, 983 F. Supp. 2d at 1269.  An

adverse employment action is an action that a reasonable employee would have

found materially adverse.  *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53,

68 (2006).[2]  Terminating an employee's employment "plainly qualifies as an adverse

employment action."  *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 803 (9th Cir.

2009).  If an employee resigns on his own accord, it can still be considered

termination under a theory of constructive termination.  *Schindrig v. Columbia*

*Mach., Inc.*, 80 F.3d 1406, 1411 (9th Cir. 1996).  An employer constructively

terminates an employee if a reasonable person in the employee's position would

have felt that he was forced to quit due to intolerable working conditions.  *Id.*  To

allege a constructive discharge, an employee must allege several aggravating factors

motivating the resignation, resulting in a continuous pattern of discriminatory

treatment.  *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990).

---

[2] While this definition of adverse employment action was originally applied to
Title VII employment actions, several courts have found this definition applies in
FMLA retaliation claims as well.  *See, e.g.*, *Wierman v. Casey's Gen. Stores*, 638
F.3d 984, 999 (8th Cir. 2011).

Constructive termination questions are normally questions of fact reserved for juries, but in some instances courts have decided constructive termination issues as a matter of law. The Ninth Circuit held that an employee was not constructively terminated even when the employee was replaced as head of the company, forced to move into a smaller office, and banned from executive lunch meetings. *Schnidrig*, 80 F.3d at 1411–12. Despite the alleged aggravating factors, the Ninth Circuit found that the employee was not constructively discharged because he "was not demoted, did not receive a cut in pay, was not encouraged to retire, and was not disciplined." *Id.* at 1412. In another case, the Ninth Circuit found no constructive discharge when the plaintiff failed to allege any aggravating factors leading to the resignation, which could include being required to perform unusually dangerous or onerous duties, subjection to harassment or violent acts, or other disciplinary conduct. *Thomas v. Douglas*, 877 F.2d 1428, 1434 (9th Cir. 1989).

Following his leave after his second shoulder surgery in 2017, Mr. Carbonell alleges that Defendants failed to accommodate his medical restrictions, even though they had the resources to do so. ECF No. 17 at 10. Further, he claims that Defendants failed to participate in a good faith discussion with him and his physicians about his medical restrictions. *Id.* Last, he claims that Tyson granted light duty accommodations to employees of other races and skin color, but not to Mr. Carbonell, a man of Cuban descent with brown skin color. *Id.* With these

actions, Mr. Carbonell alleges that Defendants constructively terminated him. ECF No. 23 at 7.

Mr. Carbonell has not presented enough facts to establish that he was constructively terminated from his position with Tyson due to Defendants' conduct related to his FMLA leave. Mr. Carbonell's allegations of retaliation come from Defendants' alleged refusal to accommodate his medical restrictions, despite their willingness to work with the restrictions of other employees. ECF No. 17 at 10. There are no specific factual allegations that, following Mr. Carbonell's leave in March to May of 2017, Defendants harassed him because of his FMLA leave, were violent towards him because of his FMLA leave, or otherwise made his working conditions, to a reasonable person, intolerable because of his FMLA leave. *Schnidrig*, 80 F.3d at 1411–12. Mr. Carbonell argues that Defendants took materially adverse actions by requiring him to lift heavy boxes and verbally and physically harassing him and intimidating him. ECF No. 23 at 7. However, these allegations all occurred before Mr. Carbonell took his medical leave and there is no connection alleged between his FMLA leave and Defendants' activities. *See* ECF No. 17 at 4–9 (allegations of harassment); 9–10 (allegations of medical leave). Because these alleged actions occurred before Mr. Carbonell took FMLA leave, the actions cannot be used to support a prima facie case of FMLA retaliation.

Mr. Carbonell does not allege that Defendants demoted him, gave him a pay cut, encouraged him to quit, or otherwise disciplined him because of his medical

leave. *Schnidrig*, 80 F.3d at 1412. Following Mr. Carbonell's return from leave, Plaintiff does not allege that Defendants subjected Mr. Carbonell to onerous or dangerous tasks or harassment or violent acts. *Thomas*, 877 F.2d at 1434. Because the harassment allegedly occurred before Mr. Carbonell returned from medical leave, the Court cannot plausibly find that the Defendants constructively terminated him with harassment and discrimination as retaliation for exercising FMLA leave.

Mr. Carbonell also argues that Defendants retaliated against him by denying him employment when he returned from leave. ECF No. 23 at 7. However, Mr. Carbonell's complaint fails to allege that Defendants denied him employment upon returning from leave; rather, it alleges that he was denied accommodations for his medical restrictions upon returning from leave. ECF No. 17 at 9–11. Even then, Mr. Carbonell's medical restriction claims are wholly conclusory. Mr. Carbonell has not sufficiently established how Defendants' actions were retaliations against him for exercising FMLA leave.

Mr. Carbonell also alleges that Defendants retaliated against him by denying him his medical restrictions when he returned from leave for his second shoulder surgery. ECF No. 17 at 10; ECF No. 23 at 6–7. However, a failure to accommodate requested medical restrictions with light duty work is not governed by the FMLA, as the FMLA does not require employers to offer light duty work to employees with serious health conditions. *See* 29 C.F.R. § 825.220(d) (stating that employers may offer light duty assignments to employees with serious health conditions, but

acceptance of a light duty position does not constitute a waiver of the employees' FMLA rights).  "There is no such thing as 'FMLA light duty.'"  *Hendricks v. Compass Group, USA, Inc.*, 496 F.3d 803, 805 (7th Cir. 2007).  Thus, Defendants' alleged failure to accommodate Mr. Carbonell's medical restrictions does not establish an FMLA retaliation claim.

Mr. Carbonell has not alleged sufficient facts to support that he was subjected to adverse employment action following his decision to take FMLA leave in 2017.  For this reason, Mr. Carbonell has failed to state an FMLA retaliation claim upon which relief may be granted.

### Abandoned Claims

In his First Amended Complaint, Mr. Carbonell also asserted a claim under the Americans with Disabilities Act ("ADA"), as well as state law tort claims of intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring, battery, and assault.  ECF No. 17 at 13–15.  In response to Defendants' Motion to Dismiss, Mr. Carbonell voluntarily dismissed these claims.  ECF No. 23 at 2.  Accordingly, the Court dismisses these claims.

### Remaining State Law Claims

Mr. Carbonell asserted both federal and state law claims in his First Amended Complaint.  *See* ECF No. 17.  As discussed supra, the Court finds that Mr. Carbonell's FMLA claims fail to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Mr. Carbonell voluntarily dismissed his ADA claims.  ECF

No. 23 at 2. FMLA and ADA were the only federal claims in his First Amended Complaint, which supported federal court jurisdiction. 28 U.S.C. § 1331. Mr. Carbonell's remaining claims against the Defendants are state law claims under the Washington Family Leave Act, the Washington Law Against Discrimination, and a claim of Intentional Infliction of Physical Injury and Aggravation.

A district court has supplemental jurisdiction over claims that "form part of the same case or controversy" of claims over which a district court has original jurisdiction. 28 U.S.C. § 1367(a). However, if a district court dismisses all claims over which it has original jurisdiction, the court "may decline to exercise supplemental jurisdiction" over the remaining claims. 28 U.S.C. § 1367(c)(3). If all original jurisdiction claims are dismissed before trial, it is common practice to decline to exercise jurisdiction over any remaining state law claims. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997).

The Court had original jurisdiction over Mr. Carbonell's federal claims under federal question jurisdiction. *See* 28 U.S.C. § 1331. However, with his federal claims dismissed, there is no basis for federal question jurisdiction. Further, the Plaintiff has not alleged a basis for the Court to assert diversity jurisdiction over Mr. Carbonell's remaining state law claims.

Because the Court no longer has original jurisdiction over any of Mr. Carbonell's claims, the Court declines to exercise supplemental jurisdiction over his remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Acri*, 114 F.3d at 1001.

Therefore, Mr. Carbonell's claims under the WFLA, WLAD, and Intentional Infliction of Physical Injury and Aggravation are dismissed without prejudice for lack of subject matter jurisdiction.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim, **ECF No. 20**, is **GRANTED**.

2. Plaintiff's abandoned claims under the Americans with Disabilities Act and abandoned tort claims of Battery, Assault, Intentional Infliction of Emotional Distress, Negative Infliction of Emotional Distress, and Negligent Hiring are all **DISMISSED WITHOUT PREJUDICE**.

3. Plaintiff's claims under the Family and Medical Leave Act, Washington Family Leave Act, Washington Law Against Discrimination, are **DISMISSED WITHOUT PREJUDICE** with leave to amend. Because the Court has lost federal question jurisdiction, Plaintiff's remaining claims are also **DISMISSED WITHOUT PREJUDICE** with leave to amend.

4. Any pending motions are **DENIED AS MOOT**. Any hearing dates are hereby stricken.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order and provide copies to counsel, and **close this case**.

**DATED** October 16, 2018.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 22